## C. T. GULICK, Minister of Interior, *vs.* WILLIAM FLOWERDEW.

### IN EQUITY. BEFORE AUSTIN, J.

### SEPTEMBER, 1883.

The Minister of Interior, as custodian of Government property, is the proper party to file a bill for an injunction against laying rails for a tramway in the streets of Honolulu.

The Minister of Interior, under the laws investing him with control of public property and internal improvements, has no right to grant a franchise for a street railway in Honolulu: the right to grant such franchise rests entirely with the Legislature.

It appearing that the contract, if any, as to a tramway, between the Minister of Interior and defendant, was in the nature of a franchise, the Court grants permanent injunction against the laying of the tramways.

### DECISION OF AUSTIN, J.

This is an action in equity to obtain an injunction. All the facts in the case are admitted. Only conclusions of law from these facts are in controversy.

Nearly all the essential facts rest in documents which are quoted at large in the pleadings and cannot well be epitomised. I shall, therefore, quote the bill and answer in full. They are as follows:

*Supreme Court of the Hawaiian Islands.—In Equity.—Charles T. Gulick, Minister of the Interior, vs. William Flowerdew. Before Mr. Justice Austin.*

To the Honorable A. FRANCIS JUDD, Chief Justice and Chancellor, or other Justice of the Supreme Court:

May it please Your Honor: Humbly complaining, your orator, Charles T. Gulick, of Honolulu, respectfully represents that he is His Majesty's Minister of the Interior, and as such Minister of the Interior he files this bill of complaint and represents unto the Court:

1st. That by law there is vested in him as such Minister of the Interior, the general supervision and control of internal public improvements within this Kingdom, and that his authority in that regard extends to and includes the construction, supervision and repair of all public streets, roads and bridges within this Kingdom.

2d. That there is now resident within this Kingdom one William Flowerdew, who has for some time past contemplated and been determined upon the project of constructing upon, along and through various streets in the city of Honolulu and suburbs in this Kingdom, a system of tramways or street railways for the purpose of running thereon cars or other vehicles for the transportation of passengers and kindred purposes.

3d. That said William Flowerdew, defendant herein, has caused to be prepared a certain plan or draft (which is hereby offered for the inspection of the Court), purporting to be a map of the streets of Honolulu and suburbs, upon which plan or map are indicated the proposed routes of his said proposed system of tramways, along and upon which streets and routes said defendant intends and threatens to so construct a system of tramways as aforesaid.

4th. That said defendant has no authority from your orator as such Minister of the Interior, nor from any other person or source thereunto sufficiently authorized, permitting or licensing said defendant to so construct such system or any system, or and that any such unauthorized construction upon said streets, or any streets of said city of Honolulu, or any of its suburbs, and that any such unauthorised construction upon said streets, or any of them, of such system of tramways or any part thereof, or any act of construction of such tramway or any interference with or entry upon said streets, or any of them, with the purpose and object of undertaking such act of construction on the part of said defendant or those acting under him, would be in contempt of your orator's right as His Majesty's said Minister of the Interior, to control such streets, would be a violation of other public and private rights, destruction of His Majesty's

highway, prejudicial to the dignity of the law, and a menace to the public peace.

5th. And your orator further shows that he is informed and believes, and so states the truth to be, that said defendant has engaged and employed one Julius H. Smith, a civil engineer, to superintend and direct the construction of said system of tramways. That upon the 24th day of August, instant, said Smith called upon your orator, at your orator's office in the capitol, in Honolulu, and informed and notified your orator officially and on behalf (as said Smith alleged) of said defendant, that said defendant intended to and would commence the construction of said system of tramways upon the streets of the said city on the morning of the then following day, and your orator then and there forbade such threatened acts on the part of said defendant.

6th. And your orator further shows that on the 27th day of August instant, (said threats on the part of said defendant to commence said construction on August 25th not having been carried out) your orator received from said defendant a letter and from said Smith a letter, each notifying your orator that said defendant would positively commence the construction of said tramways at the corner of King and Punchbowl streets in said city, on the 28th day of August, 1883. Said letters (copies of which are hereto annexed, marked respectively "Exhibit A" and "Exhibit B," and made part of this complaint) are hereby tendered for the inspection of the Court. And your orator believes that said defendant will execute his threat of so entering upon said streets, and then and there digging up the surface of the same and constructing therein and thereon said tramways.

7th. And it is further shown to the Court that your orator is informed and believes, and so states the truth to be, that said defendant has imported into this Kingdom, and now holds in readiness for such purposes, large quantities of iron rails and other material appropriate and necessary to the construction of said proposed tramways, and that said defendant has declared his design to use said material for such purpose.

8th. And your orator further shows that he is informed, and believes, and so states the truth to be, that said defendant professes and pretends to hold a letter or other written instrument received from John E. Bush, your orator's predecessor in office as such Minister of the Interior, which instrument, as is claimed by said defendant, fully authorizes him, the said defendant, to so construct a system of tramways upon the streets of Honolulu and suburbs as aforesaid. But your orator protests, and avers that such instrument, if any such defendant has, contains, and can contain, no legal or valid authority or license to said defendant to so construct tramways or any tramway as aforesaid:

9th. All which doings or pretences on the part of said defendant are contrary to equity and good conscience, and tend to the manifest wrong and injury of His Majesty's Government and the public at large.

In consideration whereof, and to the end therefore, that said defendant may full, true, direct and perfect answer make to all and singular the matters and things hereinbefore stated and set forth, and that as fully and particularly as if the same were here again repeated, and he thereunto particularly interrogated (but not upon oath, answer on oath being hereby expressly waived) : and that your orator may have a decree perpetually enjoining and restraining said defendant, his engineers and agents from interfering with or entering upon any of the streets of the said city of Honolulu or its suburbs with intent or purpose to dig or tear up the surface, or construct or place thereon or therein any iron or other railroad or tramway, except as may hereafter be authorized by law:

And that, pending the hearing herein, a temporary injunction may issue to said defendant, his attorneys, solicitors, engineers, agents, and all others acting or claiming to act under his authority, commanding them to absolutely desist and refrain from any act of destruction or other interference with the surface of said streets, or any act of construction of said tramways therein or thereon till the further order of this Court:

And that your orator may have such further relief, or such other relief as the nature of the case may require, and to equity may seem meet:

May it please the Court to grant unto your orator the writ of injunction, also the process of summons of this Court, citing said William Flowerdew at a time, and under a penalty to be therein named, to appear and answer the premises, and further to stand to and abide the order of the Court herein.

(Signed)                         CHARLES T. GULICK,
                                   Minister of the Interior.

*W. M. Gibson*, Attorney-General.

*C. W. Ashford*, solicitor for complainant.

HAWAIIAN ISLANDS, } ss.
    HONOLULU.

Charles T. Gulick, being duly sworn, deposes and states that he has heard read the foregoing bill of complaint, and that the same is true, except as to those matters therein stated to be on information and belief, and as to those matters he believes it to be true.

(Signed)                         CHARLES T. GULICK.

Subscribed and sworn before me this 27th day of August, 1883.

                                   BENJ. H. AUSTIN,
                                   Justice Supreme Court.

Let process and injunction issue as prayed for, returnable before me, at my chambers, on Monday, September 3d, 1883.

(Signed)                         BENJ. H. AUSTIN,
                                   Justice Supreme Court.

Honolulu, August 27, 1883.

---

EXHIBIT A.

                                   Honolulu, August 27, 1883.

To His Excellency CHARLES T. GULICK, Minister of the Interior, etc.:

SIR,—I have the honor to inform you that pursuant to the terms of the authority granted to me by your predecessor, under

date of 30th of June, I propose to commence preparations for laying horse tramways, and have instructed my engineer, Mr. Julius H. Smith, accordingly.

I propose to commence work at the corner of Punchbowl and King streets, and have to request that you will instruct the road supervisor not to interfere with the work.

I have the honor to be, Sir, your most obedient servant,

(Signed)            W. FLOWERDEW.

Honolulu, August 27, 1883.

To His Excellency CHARLES T. GULICK, Minister of the Interior, etc.:

Sir,—Having verbally notified you that I proposed commencing work and breaking ground for the purpose of laying rails for the tramway Mr. Flowerdew intends laying—upon Saturday, August 25th, at 7 A.M.—I have now the honor to notify you that I was ordered by Mr. Flowerdew not to do so that day, but shall, upon Tuesday, August 27th, commence such work at or near the corner of King street and Punchbowl street.

I have the honor, Sir, to be your obedient servant,

(Signed)            JULIUS H. SMITH, C.E.

*Supreme Court of the Hawaiian Islands.—In Equity.—Charles T. Gulick, Minister of the Interior, vs. William Flowerdew.*

KALAKAUA, by the Grace of God, of the Hawaiian Islands— King.

To WILLIAM FLOWERDEW, his attorneys, solicitors, engineers, agents and all others acting or claiming to act under his authority, greeting: In accordance with a prayer in a bill in equity this day filed against said William Flowerdew in this Court by Charles T. Gulick, Minister of the Interior:

You are commanded, under such penalty as the Court may see fit to inflict for contempt of this writ, to absolutely desist and abstain from any act of destruction or other interference with the surface of the streets of the city of Honolulu or suburbs, and from any act of construction thereon or therein of

any iron or other tramway or street railroad, or any entry upon any of said streets, with the intent and purpose of committing any such act until the further order of this Court.

Witness the Honorable BENJAMIN H. AUSTIN, Justice of the Supreme Court at Honolulu, this 27th day of August, 1883.

[Seal]        (Signed)        WILLIAM FOSTER,
                                                Clerk of the Supreme Court.

*W. M. Gibson,* Attorney-General.
*C. W. Ashford,* solicitor for complainant.

### THE ANSWER.

*In the Supreme Court of the Hawaiian Islands.—In Equity.— Charles T. Gulick, Minister of the Interior, vs. William Flowerdew.*

### Before Mr. Justice Austin.

The answer of William Flowerdew, the above-named defendant, to the bill of complaint of the above-named plaintiff.

This defendant, saving and reserving to himself all benefit and right of exception to the said bill of complaint, for answer thereunto saith:

1st. That he admits the allegations contained in the first paragraph of the said bill of complaint.

2d. That he admits the allegations contained in the second paragraph of the said bill of complaint.

3d. That on or about the 15th day of June last, Walter Murray Gibson, Minister of Foreign Affairs and Attorney-General of this Kingdom, called upon this defendant, at his rooms in Honolulu, and conversed with this defendant as to his views in projecting and carrying out his scheme for laying horse tramways in the streets of Honolulu and the suburbs thereof, and expressed his general concurrence therewith, and gave this defendant to understand that His Majesty's Government would help this defendant to carry out the said undertaking.

4th. And the said Walter Murray Gibson informed this defendant that the matter was within the Department of the

Interior, and that the defendant should apply to the Minister of the Interior (then John E. Bush) for such authority, and stated that the matter would be favorably represented to the said John E. Bush.

5th. In consequence of the above interview, a formal application to the Minister of the Interior was prepared, to be presented to him on his return from Kauai, and this defendant wrote and sent such application, in the words and figures following, that is to say:

Honolulu, June 26th, 1883.

His Excellency JOHN E. BUSH, Minister of the Interior, etc.:

SIR,—Considering the great public benefit and convenience that street tramways have proved in the cities and towns of Europe, the United States of America, and elsewhere, and considering that the capital of this Kingdom should not longer be without such accommodation as cities of smaller size and importance possess, I respectfully request the requisite permission and authorization for myself and any others who may associate with me, whether incorporated hereafter or not, to lay down tramways and run cars for the conveyance of passengers, etc., in the usual manner as in San Francisco and New York, in the streets of this city of Honolulu and suburbs.

In view of the expense and trouble involved in this work and preliminary expenses, I would request that a reasonable time be allowed to construct the tramways and open them to the public before any further permission be given, say six months, to make surveys and select the streets and roads, and three years to finish the construction of tramways.

Naturally however, so as to get a return on capital invested, the concluded portions of these tramways would be opened to the public as speedily as possible.

If it is considered necessary, I shall be prepared to enter into a fair and reasonable guarantee that the tramways shall be constructed within the time specified.

As it is important for me to know, before the arrival of the mail steamer, whether or not I am to be enabled to commence

this work, kindly permit me to solicit an early decision. I have the honor to be, sir, your most obedient servant,

                    (Signed)              W. FLOWERDEW.

And this defendant received from the said John E. Bush an answer to the said letter, which answer is in the words and figures following, that is to say:

                              Department of the Interior,
                                   Honolulu, June 30, 1883.

SIR,—Having considered your application for permission and authority to lay down tramways and run cars in the streets and roads of this city of Honolulu and suburbs, and recognizing that this work is one of public utility, you individually, or with such others as may associate with you, whether incorporated hereafter or not, are hereby authorized to lay down tramways and run cars for the conveyance of passengers in such streets and roads in the city of Honolulu and suburbs as you may select.

You are hereby granted six months from date hereof to make surveys and select streets and roads, and three years in which to finish the construction of said work; and until the expiration of said periods of six months and three years respectively, no similar permission will be granted.

You are authorized and permitted to operate any portions of said tramways as they may be finished.

Considering that the permission to lay the tramways will lapse for any streets or roads not operated upon within three years, and feeling assured, from the tenor of your letter, that you intend to commence the work without any unnecessary delay, I do not deem it necessary to ask for any further guarantee.

In the event of you desiring to form a corporation, you will have to make a company and apply for a charter in the usual manner.

Hoping you will succeed in your efforts to initiate and carry out this work to a successful issue,

I have the honor to be, Sir, your obedient servant,

          (Signed)              JOHN E. BUSH,
                              Minister of the Interior.

This defendant then wrote and sent to the said John E. Bush a letter in the words and figures following, that is to say:

Honolulu, July 2, 1883.

His Excellency JOHN E. BUSH, Minister of the Interior, etc.:

SIR,—I have the honor to acknowledge receipt of your letter dated June 30, granting permission to make tramways in this city, and I thank you for your kind wishes for the success of the undertaking.

I leave for San Francisco by the mail steamer now due, and shall make the necessary arrangements for proceeding with this undertaking.

I have the honor to be, Sir, your most obedient servant,

(Signed) W. FLOWERDEW.

6th. That this defendant accordingly proceeded to San Francisco and incurred considerable expense in the purchase of material and cars for the purpose of the said undertaking, and engaged an engineer for the purpose of superintending and laying down of such tramways, acting upon the belief that he was properly authorized by the said John E. Bush, by his letter of the 30th day of June last. And this defendant, acting upon the same belief, caused the plan mentioned in the third paragraph of the plaintiff's said bill to be prepared and forwarded to the plaintiff. And this defendant submits that the said John E. Bush had good and sufficient authority to give the permission contained in his said letter of the 30th day of June, and he denies that the carrying out of the said undertaking would be in contempt of the plaintiff's rights, as His Majesty's Minister of the Interior, to control said streets, or that the same would be a violation of other public and private rights, or destructive of His Majesty's highway, or prejudicial to the dignity of the law, or a menace to the public peace.

7th. And this defendant further saith that he is advised and believes that should the plaintiff succeed in preventing this defendant from carrying out his said undertaking, according to the permission granted as aforesaid, the Hawaiian Government is and will be responsible to this defendant for damages sustained by him in consequence thereof.

8th. That this defendant admits the several allegations contained in the fifth, sixth and seventh paragraphs of the said bill.

9th. That the plaintiff well knows, and at the time of the filing of his said bill of complaint well knew, that this defendant held the said letter of the 30th day of June. And this defendant admits that he does claim such letter to have the effect stated to be claimed by the defendant in the eighth paragraph of the said bill.

10th. That, on the 14th day of August last, this defendant received a letter from the plaintiff in the words and figures following, that is to say:

Department of the Interior,
Honolulu, August 14, 1883.

Mr. WILLIAM FLOWERDEW, Hawaiian Hotel:

DEAR SIR,—In reference to the scheme of laying down street tramways in the city of Honolulu, for which you claim a ministerial authority, and which you desire to inaugurate, and which has been the subject of our late conversations, I would say that our laws are quite clear in defining the powers of a minister, and especially of the Minister of the Interior, in any work of internal improvement, distinctly stating that his action must depend upon the "Consent of the King in Privy Council," and does not confer on him the authority to act independently; consequently His Majesty's Government feel, that in justice to the interest you represent, as well as to enable them to sustain your enterprise to advantage, they must conform strictly to the spirit of the law, which requires that your proposition should be submitted for the consideration of His Majesty in Privy Council.

I have the honor to be your obedient servant,
(Signed)                CHAS. T. GULICK,
Minister of the Interior.

Which letter was answered by this defendant on the 16th of the said month as follows:

Honolulu, August 16, 1883.

His Excellency C. T. GULICK, Minister of the Interior, etc.:

SIR,—In answer to your communication of the 14th instant,

in regard to permission granted me by His Majesty's late Minister of the Interior to lay down tramways and run cars in the streets and roads of the city of Honolulu and its suburbs, I beg to say that I have no objection whatever to your laying the matter before the Privy Council, if you so wish.

I have the honor to be, Sir, your most obedient servant,

(Signed) W. FLOWERDEW.

And this defendant is informed and believes that the said matter has never been brought before the honorable the Privy Council.

11th. That on the 20th and 24th days of August, this defendant wrote and sent to the plaintiff letters in the words and figures following, that is to say:

Honolulu, August 20, 1883.

To His Excellency C. T. GULICK, Minister of the Interior, etc.:

SIR,—Having received report and outline of street railway from the engineer, I have the honor to hand you copies for your information.

You will observe that the rails will be laid from the water front at bottom of Fort street up to Kukui street into Nuuanu street, also along Beretania street from Fort street to and up Nuuanu street and along King street from beyond Oahu prison to Waikiki.

It is intended to lay a single line of rails only, three feet six inches wide, flush with the surface of the streets, the cars drawn by horse power only.

The cars after sunset will carry the usual lights of street railway cars or any modifications that may be desired by your department.

To ensure that the undertaking is carried on in a proper manner, I have secured the services of Mr. Julius H. Smith, of San Francisco, an engineer who is well known for his capacity and ability, and who has laid several street railways in San Francisco and elsewhere.

I have the honor to be, Sir, your most obedient servant,

(Signed) W. FLOWERDEW.

Enclosures: 1st. Engineer's report; 2d. Map of Honolulu, with outline of street railway marked in red.

Honolulu, August 24, 1883.

To His Excellency C. T. GULICK, Minister of the Interior, etc.:

SIR,—Referring to my letter of the 20th instant, covering engineer's report to me and plan of Honolulu, I wish to say that the statement and report is relative to the work intended to be proceeded with at present, and is made without prejudice to the rights granted to me by the late Minister of the Interior, which rights I do not waive, and only forward the report and statement for your information.

The engineer advises me that it may be found desirable to go or return by Beretania street; but if this is decided upon, due notice will be given before the expiration of the six months allowed, as well as of any other street it may be decided to run cars upon.

Although the engineer advises only a single line of rails at present, still if the traffic shows that the public would be better served and accommodated by a double line, that will be laid before the expiration of the time allowed for the construction of the work, excepting always those streets, or parts of streets, that are rather narrow for a double track.

In fact, everything will be done that the engineer considers right and proper, and for the comfort and convenience of the people.

The engineer in charge is fully authorized to enter into any agreement at any time as to the detail of the work; that it will be conducted in a true and workmanlike manner, and according to the usual method of similar roads in other cities.

I have the honor to be, Sir, your most obedient servant,

(Signed)          W. FLOWERDEW.

12th. That on the 25th day of August last, this defendant caused to be prepared an agreement carrying out the terms of the said letter of the 30th day of June, and forwarded the same through His Majesty to the said plaintiff, and on the following day received a document for this defendant's concurrence and

signature, which document is in the words and figures following, that is to say:

Honolulu, August, 1883.

His Excellency CHARLES T. GULICK, Minister of the Interior.

SIR,—Considering the great public benefit and convenience that street tramways have proved in the cities and towns of Europe, the United States of America and elsewhere; and considering that the capital of this Kingdom should not be longer without such accommodation as cities of smaller size and importance possess, I respectfully request the requisite permission and authorization for myself, and any others who may associate with me, whether incorporated hereafter or not, to lay down tramways and run cars for the conveyance of passengers, etc., in this city of Honolulu and suburbs, to which the undersigned ventures to submit a synopsis of a general plan for contract and agreement, viz:

### FIRST.

That he proposes to lay street railways and run cars upon passing such streets at present selected as follows: To commence from the water front at bottom of Fort street up to Kukui street, thence along Kukui street to Nuuanu street, also along Beretania street from Fort street to Nuuanu street, thence along Nuuanu street towards the Pali, also along King street from beyond the Oahu prison road to Waikiki. It is under consideration the laying of rails and running cars on Beretania street, but if this is decided upon, due notice will be given before the expiration of the six months allowed, as well as of any other street or road it may be decided to run cars upon.

It is intended at present to lay a single line of rails only, three feet and six inches gauge, the cars to be drawn by horses or mules only: no locomotive will be used.

Should the application of compressed air or electricity be considered advisable, this will be a matter for consideration with the then Minister of the Interior, or by arbitration if necessary.

Although at present only a single line of rails will be laid

with the necessary turnouts, still if the traffic shows that the public would be better served and accommodated by a double line, that will be laid if necessary before the expiration of the time allowed for the construction of the road, except in those streets or portions of streets rather narrow for a double track. In fact everything will be done that the engineer considers right and proper for the comfort and convenience of the people.

The rails will be laid in the centre of the streets as near as may be, and it will not be necessary at any point to interfere with the free passage of vehicles of any kind.

In the more crowded portions of the routes the work will be done at night or early morning, so as not to interfere with the free passage of vehicles.

### SECOND.

The rails used will not be under eighteen pounds per yard, and where necessary, heavier rails will be employed. They will be laid flush with the streets, and in a proper and workmanlike manner.

The cars will be of the best American type, and some have been already ordered from a leading builder in San Francisco.

The cars, after sunset, will carry the usual lights of street railway cars.

Bridges blocks will be provided for proper protection of the fire hose in case of fire.

Should any matters arise, not mentioned or provided for in this memorandum, they shall be arranged hereafter by agreement between the Minister of the Interior and the engineer in charge of the work.

The buildings and site of stable of the undersigned will be established within the city limit of Honolulu, as regulated by law, and that a license be granted him under the rules and regulations governing such matters. And if located at such place as is necessary to lead the water thereon, that a supply necessary for the use of the establishment should be provided, the undersigned paying the usual rates.

### THIRD.

If necessary, the Government is to grant the privilege of

taking of sand and stones from any quarry belonging to the Government, the quantity of which will be according to its requirement, at every irregularity of the street or road, not to exceed——tons, and if a larger quantity is required permission will be at once supplied. Also, for the temporary use of its carts, wagons and machinery, if not otherwise occupied; the Government receiving such compensation as may be agreed upon, together with the privilege of prison labor if required.

### FOURTH.

The undersigned is willing to concede the privilege and extend the courtesy to those personages passage free as are denominated in the following tables, viz.:

Their Majesties the King and Queen and the Royal Family, to Government officials, police and messengers on special duties. That the Government will be allowed free use and run cars on their rails, though not interfering with their traffic.

### FIFTH.

The term or period of the franchises granted shall not exceed —— years.

### SIXTH.

The passenger fare will not exceed the fares enumerated in the following table, viz.:

|  | Cts. |
|---|---|
| From Fort street to Waikiki bridge, named Apuakehau, to and back | 15 |
| To Kapiolani Park | 20 |
| To Kalihi Bridge (Ewa road) | 20 |
| To Haniakamalama (Nuuanu) | 15 |
| To Pawaa (street to Manoa Valley) | 10 |
| To Mausoleum (Nuuanu Valley) | 10 |
| And within the prescribed stations above mentioned and the city proper | 5 |
| And every additional mile over the above named stations shall be charged extra to each mile | 5 |

### SEVENTH.

The undersigned have fully authorized Mr. Smith, the engineer regularly employed in the service of this work, to

concur and agree with your Excellency any further matters that are not expressed in this memorandum.

I have the honor to be, Sir, your most obedient servant.

13th. That this defendant declined to sign such document and caused notice to be given as aforesaid of his intention to commence work.

All which doings and pretences on the part of the plaintiff this defendant submits are contrary to equity and good conscience, and prejudicial to the rights of this defendant and tend to subvert His Majesty's Government and the good faith thereof and the proper respect therefor.

*Edward Preston & Cecil Brown,* solicitors and of counsel for defendant.

### BY THE COURT.

The defendant first objects, in abatement, that the plaintiff is not the proper person to bring this action.

I believe he is.

Section 39 of the Civil Code says the Minister of the Interior shall have the charge, custody and supervision of all Government property whatsoever, not expressly placed in the charge of some other officer.

The Government has a property in the public streets of Honolulu, and the property is in the custody of the plaintiff, under Sec. 39.

Section 40 of the Civil Code provides that the Minister of the Interior shall be accountable for the preservation and safe keeping of the Government property, and it shall be his duty to prosecute any person injuring, trespassing upon, or wrongfully taking the same.

The defendant threatened to go upon one or more of the public highways of the city of Honolulu, and tear them up for the purpose of establishing a street railway. This, if accomplished without right, would be a permanent and irreparable trespass and injury to the property of the Government in the public streets, and the plaintiff had full power, and it was his duty, if the defendant proposed to act without right, to bring this action to restrain him from so acting.

I think therefore that the action.was properly brought by the plaintiff.

The second question is: Had the defendant a right to establish a street railway in the streets of Honolulu or any part of them?

I say upon the facts, I think not.

Briefly, those essential facts are that the Minister of Foreign Affairs, and Attorney-General *ad interim,* called upon the defendant, and after some conversation gave defendant to understand that His Majesty's Government would help the defendant to carry out his scheme for laying horse tramways in the streets of Honolulu and the suburbs thereof. That the Minister of the Interior had charge of the matter, to whom defendant should apply, and that the matter would be favorably represented to such minister.

Thereupon the defendant applied to the then Minister of the Interior, Mr. John E. Bush, in writing as above quoted, who answered in writing as above quoted, and to which the defendant replied in writing as above quoted.

If the Minister of the Interior had an authority to do what he did, as shown by his letter to the defendant, of July 30, 1883, it may be that that letter and the defendant's reply to it constituted a valid contract which would authorize the defendant to proceed, as he threatened to in this case. The defendant claims that the minister had such authority, and if so, then the minister has granted to the defendant a perpetual and exclusive right, at his option, to establish in the streets of Honolulu and suburbs, and over and upon every foot of those streets, a system of street railways such as are usual in San Francisco and New York. If it were to be conceded that the Minister of the Interior had power to make such a grant, it would be an extraordinary, unusual and unprecedented grant, which ought not to be made, and of which the public might well complain. The right sought to be conveyed is perpetual, because no time is mentioned for its discontinuance, and exclusive because, if fully exercised, no other person could exercise a similar right.

The authority of the Minister of the Interior to grant such a right rests, if anywhere, in statute.

On examining the statutes, the only provisions I can find which could possibly be supposed to authorize such a grant, are Sections 34, 42 and 167 of the Civil Code.

Section 34 says: It shall be the duty of the Minister of the Interior to have a general supervision over the internal affairs of the Kingdom, and to faithfully and impartially execute the duties assigned by law to his department.

Section 42 says: The said minister, by and with the authority of the King in Cabinet Council, shall have power to lease, sell, or otherwise dispose of the public lands and other property, in such manner as he may deem best for the promotion of agriculture and the general welfare of the Kingdom, subject, however, to such restrictions as may from time to time be expressly provided by law.

Section 167 says: The Minister of the Interior shall be, and is hereby charged with the superintendence and management of the internal improvements of the Kingdom; and he may, with the approval of the King in Privy Council, appoint an officer, to be styled the Superintendent of Public Works, to assist him in the discharge of this branch of his duties.

These sections do not authorize the grant of such a right.

The definition of franchise by Bouvier, is a "privilege conferred by grant from the government and vested in individuals."

The rights to operate railroads are such franchises and can only be granted by the government. See 3 Paige, 45; 14 N. Y., 506; Cooley on Constitutional Limitations, pp. 276, 279, 195, 394, 396.

What are known as the surface railway cases, in the State of New York, are leading cases on the matters involved in this case, and those cases all hold, and no well considered case can be found against them, that the granting of a street railway franchise is vested in the legislature, and must be directly or indirectly made by the legislature. Those cases hold, as has been held in England and in most of the United States, that a fran-

chise to operate a surface railway where the rails are flush with the streets, and the cars drawn by horses upon tracks which can be used by other vehicles, if duly granted by the legislature, is not inconsistent with the ordinary use of the public streets, if reasonably exercised, and that those who border on the streets are not entitled to receive compensation as for property taken under the right of eminent domain.

See *Milhan vs. Sharp et al,* 27 N. Y., 188, 194-5; *Kellinger vs. Forty-second Street Railway Co.,* 50 N. Y., pp. 206-9. See also *Storey vs. New York Elevated R. R. Co.,* 90 N. Y., pp. 122, 154-5.

In these cases will be found ample and conclusive authority to show that no such meagre words, as are contained in the section quoted, can give to the Minister of the Interior the right to grant the franchise which he sought to grant by his letter of June 30, 1883.

On examining the Constitution, and the law as to corporations, and the special railroad acts of the legislature, I can find no enactment which I think would authorize the grant of a street railway franchise. To obtain such a grant I think resort must be had to the legislature. The granting of such a right I think might well be vested with the King in Privy Council, where such conditions could be attached and such specifications required as would render the exercise of it not oppressive, as it would have been under the letter of June 30th.

The defendant says he has expended large sums of money upon the faith of that letter. If so it is a misfortune, and it may be that he has a claim for it. By that letter there was in terms secured to him a most unusual franchise, the nature of which, it would seem, might have led him to greater caution than he seems to have exercised, before making so great expenditure.

The other documents and facts plead and quoted, though proper as evidence in the case, are not specially important in deciding it.

The plaintiff in this case sought to induce the defendant to

submit the controversy to the King in Privy Council, which the defendant refused to do.

Thereafter on August 20 and 24, the defendant addressed letters to the plaintiff by which, in the letter of August 20, he proposes to erect a street railway, which might, it may be, prove beneficial to the public, but in the letter of August 24, he still claims to retain all the franchises which are secured to him by the letter of June 30. The defendant further says that he transmitted to the plaintiff, through His Majesty, a proposed contract which was not returned to him, and that soon thereafter he received a copy of a proposed contract which the defendant declined to sign.

It is not proved that this paper was prepared by the plaintiff or with his concurrence. It is quoted at large. Aside from the fact that it proposes that a term be fixed for the continuance of the franchise, it admits to exist all the other features detailed in the letter of June 30. The exclusive nature of the franchise is conceded.

The whole matter hinges upon the legal validity of the letter of June 30.

The views I have stated lead me to grant the permanent injunction prayed for in the plaintiff's bill.

*C. W. Ashford,* for plaintiff.

*E. Preston* and *Cecil Brown,* for defendant.

Honolulu, Sept. 10, 1883.